UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRIAN M. EVANS,                    :
      Plaintiff,            :
                            :
      v.                         :        CA 11-146 S
                            :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF SOCIAL SECURITY, :
      Defendant.            :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Brian M. Evans ("Plaintiff" or "the claimant") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the decision of the Commissioner. See Plaintiff's Motion to Reverse without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Docket ("Dkt.") #7) ("Motion to Reverse"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the Commissioner's decision. See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. #9) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. §

636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

## Facts and Travel

Plaintiff was born in 1975 and was thirty-two years old as of the alleged onset date of his disability. (Record ("R.") at 179, 198) He has a tenth grade education, is able to communicate in English, and has past relevant work as a short order cook, automobile mechanic, and fast food worker. (R. at 28-29, 31-34, 50, 195-97, 202, 204-05)

Plaintiff filed an application for SSI on February 1, 2008, (R. at 10, 179-85), alleging disability since January 1, 2008, due to a skin disorder and depression, (R. at 10, 58). The application was denied initially, (R. at 10, 58-60), and on reconsideration, (R. at 10, 64-66). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. at 10, 67) A video hearing was held on October 19, 2010, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert ("ME") and an impartial vocational expert ("VE"). (R. at 10, 24-55)

On October 28, 2010, the ALJ issued a decision ("Decision")

2

finding that Plaintiff was not disabled within the meaning of the Act. (R. at 10-19) The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the ninety days allotted for such review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. at 2-4) Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[1] are conclusive.

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also

Id. (citing 42 U.S.C. § 405(g)). The determination of
substantiality is based upon an evaluation of the record as a
whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the
[Commissioner's] findings ... if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.")(second alteration in original)). The
Court does not reinterpret the evidence or otherwise substitute its
own judgment for that of the Commissioner. Id. at 30-31 (citing
Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir.
1989)). "Indeed, the resolution of conflicts in the evidence is
for the Commissioner, not the courts." Id. at 31 (citing Rodriguez
v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)
(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420
(1971))).

**Law**

An individual is eligible to receive SSI if he is aged, blind,
or disabled and meets certain income requirements. See 42 U.S.C.
§ 1382(a). The Act defines disability as the "inability to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for

---

Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v.
Perales, 402 U.S. at 401).

a continuous period of not less than 12 months ...."  42 U.S.C. §
423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A).  A claimant's
impairment must be of such severity that he is unable to perform
his previous work or any other kind of substantial gainful
employment which exists in the national economy.  See 42 U.S.C. §
423(d)(2)(A).  "An impairment or combination of impairments is not
severe if it does not significantly limit [a claimant's] physical
or mental ability to do basic work activities."[2]  20 C.F.R. §
416.921(a) (2011).  A claimant's complaints alone cannot provide a
basis for entitlement when they are not supported by medical
evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d
19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a) (2011).

    The Social Security regulations prescribe a five step inquiry
for use in determining whether a claimant is disabled.  See 20
C.F.R. § 404.1520(a) (2011); see also Bowen v. Yuckert, 482 U.S.
137, 140-42, 107 S.Ct. 2287 (1987); Seavey v. Barnhart, 276 F.3d 1,

---

[2] The regulations describe "basic work activities" as "the abilities
and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b),
416.921(b) (2011).  Examples of these include:

    (1)  Physical functions such as walking, standing, sitting,
    lifting, pushing, pulling, reaching, carrying, or handling;
    (2)  Capacities for seeing, hearing, and speaking;
    (3)  Understanding, carrying out, and remembering simple
    instructions;
    (4)  Use of judgment;
    (5)  Responding appropriately to supervision, co-workers and
    usual work situations; and
    (6)  Dealing with changes in a routine work setting.

Id.

5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

If the claimant is under a disability and there is medical evidence of a substance use disorder, there is an additional issue as to whether the substance use disorder is a contributing factor material to the determination of disability under §§ 223(d)(2) and 1614(a)(3)(j) of the Act. (R. at 8); see also 20 C.F.R. § 404.1535(a) (2011). If so, the individual is not disabled. (R. at 8); see also 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be

a contributing factor material to the Commissioner's determination that the individual is disabled."); <u>Brown v. Apfel</u>, 71 F.Supp.2d at 29 (quoting statute); 20 C.F.R. § 404.1535(b). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." <u>Id.</u> at 35; <u>see also</u> 20 C.F.R. § 404.1535(b)(1).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since February 1, 2008, the application date,[3] (R. at 13); that Plaintiff's cannabis dependence and a cannabis-induced mood and anxiety disorder were severe impairments, but his skin disorder was not, (<u>id.</u>); that Plaintiff's impairments, including the substance use disorders, met the listed impairments in §§ 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1, (R. at 13-16); that if Plaintiff stopped the substance use, the remaining limitations would not cause more than a minimal impact on Plaintiff's ability to perform basic work activities, and that, therefore, Plaintiff would not have a severe impairment or combination of impairments, (R. at 16-19); that because Plaintiff

_____

[3] Plaintiff's alleged onset date is January 1, 2008. (R. at 10, 179, 203)  He testified that he worked two jobs in 2008 and was fired from both due to "[c]onfrontation with the boss." (R. at 29)  The record reflects that Plaintiff earned a total of $818.44 in 2008. (R. at 195)

would not be disabled if he stopped the substance use, his substance use disorder is a contributing factor material to the determination of disability, (R. at 19); and that Plaintiff had not been disabled within the meaning of the Act from February 1, 2008, through the date of the ALJ's decision, (id.).

**Errors Claimed**

Plaintiff alleges that: 1) the ALJ erred in failing to find Plaintiff's antisocial personality disorder to be a severe impairment at step two; 2) the ALJ deviated, without rationale, from the Commissioner's policy regarding the materiality of substance abuse; 3) the ALJ erred in finding that if Plaintiff stopped his substance use, the remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities; 4) the ALJ erred in finding Plaintiff's cannabis abuse to be a material factor contributing to the finding of disability given that the substance abuse may be related to the underlying impairment; and 5) the ALJ's credibility finding was not supported by substantial evidence.

**Discussion**

## I. The ALJ's Step Two Finding

As stated above, the ALJ found severe only Plaintiff's cannabis dependence and a cannabis-induced mood and anxiety disorder. (R. at 13) Plaintiff argues that the ALJ erred in declining to find Plaintiff's antisocial personality disorder to be

a severe impairment.  See Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 11-13.  Specifically, Plaintiff contends that the ALJ committed error in rejecting, allegedly without adequate justification, the opinions of Louis Turchetta, Ed.D. ("Dr. Turchetta"), and Robert J. Zielinski, M.D. ("Dr. Zielinski").  Id. at 12.  Dr. Turchetta is a licensed psychologist who evaluated Plaintiff at the request of his attorney. (R. at 317, 322)  Dr. Zielinski is a staff psychiatrist at Gateway Healthcare, Inc. ("Gateway"), (R. at 458), where Plaintiff was seen from October 8, 2009, (R. at 455), to January 17, 2010, (R. at 451).[4]  Both doctors diagnosed Plaintiff with antisocial personality disorder, (R. at 322, 458), although Dr. Zielinski indicated that his diagnosis was made "provisionally," (R. at 458).

In two long paragraphs, the ALJ detailed Dr. Turchetta's evaluation of Plaintiff, (R. at 14-15), and Plaintiff's treatment at Gateway, (R. at 15), and specifically noted that Plaintiff had been diagnosed by each source with "an anti-social personality

---

[4] Plaintiff was discharged from treatment at Gateway in April 2010 after he failed to keep a February 25th appointment with the psychiatric clinical nurse specialist and the case manager subsequently received a telephone call reporting that Plaintiff was incarcerated.  (R. at 451, 467)

disorder," (R. at 14, 15).[5]   Thus, the ALJ was clearly aware of
the antisocial personality diagnoses by these sources.  However,
"[a] diagnosis alone is an insufficient basis for a finding that an
impairment is severe."  <u>Sellers v. Barnhart</u>, 246 F.Supp.2d 1201,
1211 (M.D. Ala. 2002); <u>see also</u> <u>Petersen v. Barnhart</u>, 213 Fed.
Appx. 600, 604 (9th Cir. 2006)(noting that diagnosis of multiple
sclerosis alone could not satisfy Step 2 inquiry); <u>Wood v. Astrue</u>,
No. 8:10-CV-2373-T-17AEP, 2012 WL 834132, at *4 (M.D. Fla. Mar. 13,
2012)(noting that although ALJ found plaintiff's substance
dependence to be a severe impairment at Step 2, two doctors'
diagnoses of additional impairments did not establish that the
alleged impairments were severe); <u>Carnley v. Astrue</u>, No.
5:07cv155/RS/EMT, 2008 WL 3896019, at *7 (N.D. Fla. Aug. 21, 2008)
(noting that although doctor and others diagnosed plaintiff with
depression, "a diagnosis alone does not equate to (or compel) a
finding that [p]laintiff's depression is severe")(citing <u>Salles v.
Comm'r of Soc. Sec.</u>, 229 Fed. Appx. 140, 145 (3rd Cir. 2007)).

---

[5] At Gateway, Plaintiff was treated by both Dr. Zielinski and
Patricia Fisher, MSN RN, a psychiatric clinical nurse specialist, (R. at
460, 467).  While the October 8, 2009, psychiatric evaluation which
contains the provisional antisocial personality disorder diagnosis is
signed by Dr. Zielinski, (R. at 458), the termination/transfer summary
suggests that some or all of the evaluation (which lasted ninety minutes)
may have been performed by Nurse Fisher, (R at 450).  The summary states
in part: "MSN RN notes in psychiatric evaluation on 10/08/2010: Client's
speech is slightly rapid and mildly pressure[d] ...."  (<u>Id.</u>)  The
observations recounted in the summary correspond to information appearing
in the evaluation.  (R. at 457)  This may explain why the ALJ appears to
refer to the psychiatric evaluation which bears Dr. Zielinski's signature
as being performed by Nurse Fisher.  (R. at 15)

Plaintiff appears to overlook this fact because he faults the ALJ for "reject[ing] a diagnosis made by an examining and a treating physician, without adequate justification," Plaintiff's Mem. at 12. In point of fact, the ALJ did not reject the diagnosis, but implicitly found that it was not a severe impairment. (R. at 13) In making this finding, the ALJ attached significant weight to the opinion of Stuart Gitlow, M.D. ("Dr. Gitlow"), the ME, a specialist in psychiatry addiction medicine, (R. at 16, 39). Dr. Gitlow testified that he did not disagree with the diagnosis of antisocial personality disorder, (R. at 45). Plaintiff notes this fact, <u>see</u> Plaintiff's Mem. at 12, and attempts to use it to support his claim that the ALJ erred in failing to find that Plaintiff's antisocial personality disorder constituted a severe impairment, <u>see</u> <u>id.</u> at 11-13. However, it is clear from Dr. Gitlow's testimony that he believed that there was insufficient evidence in the record to support a finding that the antisocial personality disorder would constitute a severe impairment in the absence of Plaintiff's substance abuse. (R. at 45)

After being asked by Plaintiff's counsel "[w]hat's wrong with [Drs. Turchetta's and Zielinski's] diagnosis?"[6] (R. at 44), Dr. Gitlow responded:

A    I'm not saying there's anything wrong with their

_____

[6] Immediately prior to asking this question, Plaintiff's counsel had referred to "two acceptable medical sources in the record who have diagnosed [antisocial personality disorder] ...." (R. at 44)

> diagnosis. I think it's a fairly reasonable
> proposition to say that he might well have
> antisocial personality disorder. And I don't know
> that I'd argue that point at all. **The question in
> my mind is to what degree is the antisocial
> personality disorder impairing.** And because of the
> ongoing use of marijuana, and because of the degree
> to which that can lead to emotional laybility
> [phonetic] and social laybility, I don't know that
> he would have the same difficulties that he has
> been having, that he testified to, in the absence
> of the marijuana.

(R. at 45)(bold added). Later, Dr. Gitlow repeated: "And let me

sort of underscore, I'm not disagreeing with antisocial personality

disorder. I think that may well be there. I just -- I don't have

anything that shows that he would be impaired by that in the

absence of marijuana." (R. at 48)

Thus, it is clear that Dr. Gitlow agreed that Plaintiff might

have antisocial personality disorder. (R. at 45) However, Dr.

Gitlow concluded that there was no evidence showing the antisocial

personality disorder by itself was severely impairing. (Id.) He

stated that the problem with ongoing cannabis use is that "it's not

possible to rule in the other primary diagnoses, including ...

antisocial personality disorder. And so it leaves us with the

cannabis use as being the only thing that's supportable at that

point." (R. at 41)

Moreover, Dr. Gitlow noted that Dr. Zielinski's diagnosis was

not unqualified. (R. at 46) This is reflected in the following

exchange between Plaintiff's counsel and Dr. Gitlow:

Q   So there is support for that diagnosis.

12

A   Well, let's be clear, Dr. Z[ie]linski didn't diagnose
            it, he said it's a provisional diagnosis, and again,
            what provisional means, Z[ie]linski's pretty good
            with respect to substance use issues, what provi-
            sional means is that it looks like it could be, but
            I'm uncertain enough to make it a temporary
            diagnosis while we wait to see something else.  And
            Dr. Z[ie]linski's pretty clear in the plan, "I
            encouraged him to stop smoking marijuana to give the
            medication a good chance to work," ....

(R. at 46)

Thus, Plaintiff's assumption that Dr. Zielinski's provisional diagnosis supports a finding that Plaintiff's antisocial personality disorder was a severe impairment is doubly flawed. First, it was not an unqualified diagnosis.  Second, as already noted, even if it were a final diagnosis, a diagnosis alone does not support a finding that the impairment is severe.  To the extent that Plaintiff contends the ALJ somehow erred with respect to his treatment of Dr. Zielinski's provisional diagnosis, such contention is rejected.

With respect to Plaintiff's claim that the ALJ rejected Dr. Turchetta's opinion without adequate justification, the Court is similarly unpersuaded.  The ALJ noted that Dr. Turchetta "found that the claimant had marked to extreme restriction of activities of daily living; marked to extreme difficulties in maintaining social functioning; marked to extreme difficulties in maintaining concentration, persistence or pace; and one to two episodes of decompensation."  (R. at 14-15)   The ALJ concluded that this

13

evaluation "is not supported by and is not consistent with the record as a whole, and is not entitled to significant probative weight." (R. at 15) This Court has reviewed the entire record and concurs in the ALJ's assessment of Dr. Turchetta's findings.[7] In addition, the ALJ accurately noted that Dr. Turchetta was a "non-treating source," (id.), and that he had been retained for the sole purpose of supporting Plaintiff's disability claim,[8] (id.).

---

[7] This evidence includes an April 19, 2008, psychiatric evaluation of Plaintiff by William Unger, Ph.D. ("Dr. Unger"). (R. at 244-49) Dr. Unger did not find that Plaintiff had an antisocial personality disorder and, in fact, recorded "None," (R. at 248), with respect to Axis II of the DSM - IV diagnoses, (id.). In addition, Joseph Litchman, Ph.D. ("Dr. Litchman") performed a Mental Residual Functional Capacity ("MRFC") assessment of Plaintiff on May 1, 2008. (R. at 299-301) Dr. Litchman concluded that Plaintiff was not significantly limited or was only moderately limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. at 299-301) These findings were affirmed by another medical consultant, Clifford Gordon, Ed.D. ("Dr. Gordon"), on November 26, 2008. (R. at 315)

The Court again notes that conflicts in the evidence are for the Commissioner to resolve, Brown v. Apfel, 71 F.Supp.2d at 31, and that in appropriate circumstances, opinions from State agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources, see Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (S.S.A.), at *3; see also Keating v. Sec'y of Health and Human Servs., 848 F.2d at 275 n.1 (1st Cir. 1988).

[8] Evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527, which provides in relevant part that:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

At step two, it is Plaintiff's burden to produce evidence that he suffers from a medically determinable impairment, see <u>Musto v. Halter</u>, 135 F.Supp.2d 220, 233 (D. Mass. 2001)(noting plaintiff's burden of proving disability and stating that plaintiff "first had to demonstrate that he had a medically severe impairment or combination of impairments"). The Court finds that Plaintiff failed to meet his burden. Accordingly, Plaintiff's first claim of error should be rejected. I so recommend.

## II. **The ALJ's Materiality Finding**

The ALJ found that Plaintiff's cannabis[9] dependence and a cannabis induced mood and anxiety disorder were severe at step two. (R. at 13) However, the ALJ also found that if Plaintiff stopped

---

            inconsistent with the other substantial evidence in
            your case record, we will give it controlling weight.
            When we do not give the treating source's opinion
            controlling weight, we apply the factors listed in
            paragraphs (d)(2)(i) and (d)(2)(ii) of this section,
            as well as the factors in paragraphs (d)(3) through
            (d)(6) of this section in determining the weight to
            give the opinion. We will always give good reasons in
            our notice of determination or decision for the
            weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). In evaluating medical opinions, an ALJ is
directed to consider the existence of an examining relationship, the
existence of a treating relationship, the length, nature, and extent
thereof, the supportability of an opinion, the consistency of an opinion
with the record as a whole, the specialization of the source, and any
other factors which the claimant brings to the adjudicator's attention.
See 20 C.F.R. § 404.1527(d)(1)-(6). On March 26, 2012, the text of certain sections of the C.F.R.
changed. Thus, the former § 1527(d)(1)-(6) has become § 1527(c)(1)-(6).
The Court uses the format and text of the C.F.R. as it existed when
Plaintiff filed his Complaint.

   [9] The terms "cannabis" and "marijuana" appear throughout the record.
The Court uses the terms interchangeably.

his substance use, his remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities. (R. at 16) Thus, the ALJ determined that Plaintiff's substance use disorder was a contributing factor material to the determination of disability.[10] (R. at 19)

Plaintiff makes three overlapping arguments with respect to the ALJ's materiality determination. The first is premised on the contention that the ALJ erred in not finding that Plaintiff's antisocial personality disorder was severe. See Plaintiff's Mem. at 13.[11] As the Court has already determined that the ALJ did not

_____

[10] The "key factor" in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the claimant would be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1); see also Brown, 71 F.Supp.2d at 35.

> In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b)(2).

[11] Plaintiff identifies this argument in the following heading:

> B.   Assuming arguendo that antisocial personality disorder should have been found to be a severe impairment at step

16

err with respect to this finding and that it is supported by substantial evidence in the record, there is no need to discuss this portion of Plaintiff's argument regarding the materiality finding.

Plaintiff next asserts "that there is absolutely no evidence to support the conclusion ..." id. at 14, that Plaintiff would not be disabled if he stopped smoking cannabis, id. As support for this assertion, Plaintiff refers generally to Dr. Gitlow's testimony but without pinpoint citation to the record.[12] See id. Presumably, Plaintiff has in mind the following testimony by Dr. Gitlow:

> Again, the problem is with ongoing cannabis use, it's not possible to rule in the other primary diagnoses, including for that matter antisocial personality disorder. And so it leaves us with the cannabis use as being the only thing that's supportable at that point. Obviously at this point with the claimant incarcerated

---

2 of the sequential evaluation process, the ALJ has deviated, without rationale, from the Commissioner's own policy concerning the materiality of substance abuse and has provided no rationale for this deviation. This Court should apply the Commissioner's own policy and reverse the Decision of the Commissioner and find that Evans is disabled.

Plaintiff's Mem. at 13.

[12] District of Rhode Island Local Rule ("DRI LR") Cv 7(d)(4) states:

Record Citations in Administrative Appeals. Any memorandum filed in a case involving an appeal from the ruling or determination of an administrative tribunal, including but not limited to Social Security disability determinations, shall include all pertinent citations to the administrative record.

DRI LR Cv 7(d)(4).

with a normal mental status exam, he's not in a position
to demonstrate the type of behaviors that we're likely to
see as part of antisocial personality disorder.  For
that, we would need a continued period with demonstrated
abstinence from cannabis, and in which he is showing
ongoing symptoms and findings consistent with antisocial
personality disorder.  And this point, the substance use
is material because there are no occasions on which he
has antisocial behaviors in which he wasn't actively
involved in marijuana use.

(R. at 41).

In addition to the above, Plaintiff also may be referring to

the following colloquy between the ALJ and Dr. Gitlow:

Q   But you indicated that you can't rule in the mental
    impairments without the cannabis[?]

A   Without the cannabis at this point because the mental
    status exam is normal, there's -- it basically says
    that there's nothing from a psychiatric standpoint.
    And we've got all the past history showing that
    something might be wrong, and in an incarcerated
    [sic] is not the best standpoint from which to
    assess whether or not somebody might have impairments.
    What I can say based on mental status exam is that
    if he did have impairments it wouldn't be from a
    primary axis one disorder.  It might be that once
    released, if he stay[s] abstinent, there would
    still be antisocial personality disorder, and that
    might cause him some impairments, but we can't tell
    if they would because we don't have any periods in
    which he hasn't been using marijuana actively prior
    to his incarceration.

(R. at 43)

Regardless  of  which  portion  of  Dr.  Gitlow's  testimony

Plaintiff has in mind, his argument, reduced to its essence, is the

following.  A claimant should be found disabled if his continuous

substance abuse makes it impossible to determine whether he would

still  be  impaired  if  he  stopped  the  abuse.  Plaintiff  cites  an

18

emergency message, EM-96200,[13] sent to all disability adjudicators

on August 30, 1996 (the "Emergency Message" or "Emergency

Teletype").[14]  See Plaintiff's Mem. at 9-10, 14.

The Emergency Teletype states in part that:

Since a finding that DAA is material will be made only
when the evidence establishes that the individual would
not be disabled if he/she stopped using drugs/alcohol,
the [disability examiner] will find that DAA is not a
contributing factor material to the determination of
disability.

Emergency Teletype, Answer to Question 27; see also id., Answer to

Question 29 ("When it is not possible to separate the mental

restrictions and limitations imposed by DAA and the various other

mental disorders shown by the evidence, a finding of 'not material'

would be appropriate.").

As an initial matter, the Court notes that it has previously

expressed doubt as to whether the Emergency Teletype is binding.

See Brown, 71 F.Supp.2d at 36 ("Whether such a teletype is binding

on the Social Security Administration is questionable ...."); see

also Parra v. Astrue, 481 F.3d 742, 749 (9th Cir. 2007)(noting that

"internal agency documents ... do not carry the force of law and

are not binding upon the agency" and that "they do not create

judicially enforceable duties").  Moreover, in Friend v. Astrue,

_____

[13] Plaintiff actually cites EM 96-94, but the Court assumes that this
is a typographical error.

[14] The Emergency Teletype was the result of questions and answers
from a teleconference concerning drug addiction and alcoholism ("DAA")
on July 2, 1996.  See Emergency Teletype at 1.

788 F.Supp.2d 365 (E.D. Pa. 2011), the plaintiff made the same argument based on the same language at issue in the instant case. See id. at 370; see also id. at 367 (noting plaintiff's argument that ALJ "could not reasonably have determined that he would be able to work in the absence of his substance abuse, since the record revealed no prolonged periods of abstinence in which his condition could be evaluated"). The court was not persuaded:

> It is unthinkable that Emergency Teletype-96 was intended to convey to agency employees that a drug addict or alcoholic can bypass 20 C.F.R. § 404.1614(c)(3) by the simple expedient of always remaining high. For this reason, I cannot accept [plaintiff]'s interpretation of the memorandum. Doubtless, evidence of the claimant's condition during a period of abstinence is "the most useful evidence." However, when it is not available, Emergency Teletype-96 does not prevent an ALJ from turning to the evidence which is available, and seeking other sources if the record is insufficient.

Id. at 370.

This Court rejected a similar argument based on the same language in Brown. See 71 F.Supp.2d at 36 ("The teletype states that if mental impairments cannot be separated from alcohol or drug addiction, a finding of 'not material' is appropriate when making the materiality determination. Plaintiff argues that there was a lack of substantial evidence to separate plaintiff's alcoholism and mental impairments and thus a finding of 'material' was improper."); id. at 37 (finding plaintiff's argument without merit).

The Court agrees with the Friend and Brown courts. Accepting

the argument made by Plaintiff here would lead to an absurd result. Plaintiff cannot avoid the consequences of his substance abuse by continuously remaining under the influence of cannabis[15] and then claiming that there is no evidence to support a finding that he would not be disabled if he ceased his cannabis use.

Plaintiff's third claim of error with respect to the ALJ's materiality determination is that his substance abuse may be related to an underlying impairment, specifically antisocial personality disorder. <u>See</u> Plaintiff's Mem. at 14. Plaintiff posits that "[g]iven that the underlying disorder may be resulting in the substance abuse, the ALJ's finding that the substance abuse is a material factor contributing to [Plaintiff]'s disability is not supported by substantial evidence and remand is required." <u>Id.</u> at 15. It is apparent that this argument is a variation of Plaintiff's previous argument. Plaintiff essentially contends that his substance abuse may be the product of his antisocial personality disorder and that because there was no sustained period when Plaintiff was not abusing cannabis (other than when he was

---

[15] In multiple places, the record reflects Plaintiff's "daily" use of cannabis, (R. at 231, 241), or marijuana, (R. at 260, 262, 270, 271, 319, 348, 418, 456, 462). A July 16, 2007, clinic note from Rhode Island Hospital reflects that "[h]e does smoke marijuana three to four times a day." (R. at 262) At an initial evaluation six days earlier, Plaintiff stated that he used cannabis "a lot," (R. at 231), and that he had no desire to quit, (<u>id.</u>). On April 13, 2009, Plaintiff indicated that he was "using marijuana multiple times a day." (R. at 348) Plaintiff continued to use cannabis/marijuana despite the urging of his doctors that he abstain from drugs. (R. at 241, 340, 458, 460, 461, 463) Dr. Zielinski recorded on October 29, 2009, that "[Plaintiff] states he is still smoking pot but has cut down." (R. at 462)

incarcerated), the ALJ's finding that Plaintiff would not have an impairment that significantly limits his ability to perform basic work activities is not supported by substantial evidence.

Plaintiff, however, bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); see also Doughty v. Apfel, 245 F.3d 1274, 1279-80 (11th Cir. 2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999). The Court declines to allow Plaintiff to shift that burden to the Commissioner by positing that his substance abuse may be the result of his antisocial personality disorder and that the Commissioner cannot prove otherwise. The reason that the Commissioner cannot prove otherwise is that Plaintiff is always using cannabis (except presumably when incarcerated). As the ME observed, the antisocial personality disorder diagnosis is "a little bit of a circular argument. The fact that he's using a drug that's illegal is part of why he would be diagnosed with antisocial personality disorder." (R. at 48-49)

In sum, the Court finds that the ALJ's materiality determination is supported by substantial evidence in the record and is free of legal error. Plaintiff's second claim of error, therefore, should be rejected. I so recommend.

## III. The ALJ's Evaluation of Plaintiff's Credibility

The ALJ found that if Plaintiff stopped the substance abuse, his medically determinable impairments could "reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments ...." (R. at 17) Plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence. Plaintiff's Mem. at 15. According to Plaintiff, this finding was based in part on the fact that "Dr. Gitlow noted that the claimant had unremarkable mental status examinations and no anti-social personality disorder diagnosis in June and August 2010, while he was on Depakote in the Adult Correctional Institut[ions] and presumably not using cannabis." Id. at 15-16 (quoting R. at 18).

> However, this should not bear negatively on Evans' credibility given Gitlow's testimony that "[o]bviously at this point with the claimant incarcerated with a normal mental status exam, he's not in a position to demonstrate the type of behaviors that we're likely to see as apart of antisocial personality disorder." [R. at 41] Given that we would not expect abnormal mental status examinations on the basis of an antisocial personality disorder in such a setting, the ALJ's credibility finding is not supported by substantial evidence.

Id. at 16 (first alteration in original).

It is by no means clear that the ALJ's credibility finding was based in part on Dr. Gitlow's statement about Plaintiff having

unremarkable mental status examinations and no antisocial
personality disorder diagnosis while in prison. The discussion of
Plaintiff's credibility begins with the penultimate paragraph on
the eighth page of the Decision. (R. at 17) Dr. Gitlow's
statement does not appear until more than halfway down the
following page, (R. at 18), in a paragraph which discusses his
testimony. The first reason given by the ALJ for finding Plaintiff
less than fully credible appears on the eighth page, (R. at 17),
and it is a powerful one. Plaintiff lied to Dr. Unger about his
past history of drug abuse during an evaluation performed for the
Rhode Island Disability Determination Services. (R. at 17) As the
ALJ noted, Plaintiff denied a history of substance abuse to Dr.
Unger in April 2008, the same month that he admitted to his primary
care provider at Rhode Island Hospital that he was using cannabis.
(Id.); see also (R. at 271).

    In point of fact, Plaintiff's denial was even more egregious
than the ALJ noted. Not only does the record reflect Plaintiff's
long-term and almost continuous use of cannabis,(R. at 231, 241,
260, 262, 270, 271, 319, 348, 456, 462), it also reflects his use
of other illegal drugs. A December 7, 2007, note from the Rhode
Island Hospital Department of Psychiatry states "pt smoking
cannabis daily also now admits to [every] 2 wk cocaine use (intra-
nasal)." (R. at 241) This resulted in the assessment "cannabis
abuse/intermittent cocaine abuse." (Id.) A July 10, 2007,

evaluation from Rhode Island Hospital includes a reference to "ecstacy" followed by "[approximately every] 8 months." (R. at 231) Indeed, Plaintiff "reported a long history of substance involvement," (R. at 319), to Dr. Turchetta on February 2, 2009.

Moreover, Dr. Zielinski recorded that Plaintiff "endorsed the fact ... that he manipulates people and lies to get his way." (R. at 456) Plaintiff denied to Dr. Zielinski that he had ever used cocaine and stated that he had "made up a story about using cocaine because his lawyer thought that would help him with his legal charges in terms of explaining his actions." (R. at 456) This denial is suspect as Plaintiff told Rhode Island Hospital personnel that he was using cocaine intra-nasally. (R. at 241) It is doubtful that Plaintiff would make such a statement in the course of medical treatment unless it were true.

In addition, Plaintiff testified that he did not believe that he could keep a job if he secured one:

> [b]ecause I keep having this recurring problem where I'm having conflict with authority, and then I don't work well with others. I'm pretty much a social outcast, like, for some reason I have hard times with personal relationships or friendship relationships. I have a hard time making friends and being nice to people.

(R. at 34) However, Plaintiff told Rhode Island Hospital Department of Psychiatry personnel that he felt that the jobs "he is able to get are beneath him," (R. at 236), and that he believed "he is unable to tolerate jobs that do not allow him to express 'creative freedom,'" (id.). Plaintiff additionally reported that

he was pursuing a job at a pizza place he had previously worked and had "left on good terms." (R. at 239)  With regard to his claims of being a "social outcast," (R. at 34), and having a difficult time with personal relationships, (id.), in July of 2007 Plaintiff reported that he "currently has three sexual partners, all females," (R. at 262), and that he resided with one of them, (id.)

Plaintiff has also compromised his credibility in a number of other ways.  While Plaintiff's physicians have urged him to strive for abstinence, he failed to comply until he was forced to abstain during his incarceration in 2010.  (R. at 241, 461, 463); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374`86 (S.S.A.), at *7 ("individual's statements may be less credible if the ... individual is not following the treatment as prescribed and there are no good reasons for this failure").  Plaintiff has also claimed that he used marijuana to self-medicate because he has no health insurance for psychological treatment.  (R at 319)  However, this claim lacks credibility because he continued to use marijuana when he was in psychological treatment.  (R. at 241, 340, 461, 463)

Thus, even assuming that the ALJ's credibility finding was based in part on Dr. Gitlow's statement about Plaintiff's unremarkable mental status examinations and no diagnosis of antisocial personality disorder while confined in prison, the strength of the primary reason for finding Plaintiff less than fully credible and the other evidence in the record more than amply

support the ALJ's conclusion.

Finally, the ALJ appears to have understood Dr. Gitlow's testimony that a prison is not the optimum environment in which to assess whether a person has mental impairments such an antisocial personality disorder. (R. at 43) Immediately after the sentence cited by Plaintiff, see Plaintiff's Mem. at 15-16 (quoting R. at 18), the ALJ noted that Dr. Gitlow "stated that without a longer period of sobriety and supporting medical documentation he could not rule in an anti-social personality disorder or another mental impairment that was unrelated to cannabis," (R. at 18). This at least suggests that the ALJ recognized that drawing conclusions with respect to whether Plaintiff had a mental impairment based on information obtained while he was in prison was problematic.

The ALJ's credibility finding is generally entitled to deference, especially when supported by specific findings. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)(citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984) (stating that ALJ is "empowered to make credibility determinations ...."); accord Harrell v. Bowen, 862 F.2d 471, 482 (5th Cir. 1988)("It must be remembered that [t]he evaluation of a claimant's

subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.")(internal quotation marks omitted).

The Court concludes that the ALJ evaluated Plaintiff's credibility in accordance with the requirements and that the ALJ adequately stated his rationale for his credibility finding. Accordingly, Plaintiff's final claim should be rejected.

### Summary

The ALJ did not err in declining to find that Plaintiff's antisocial personality disorder was a severe impairment. Substantial evidence supports the ALJ's determination that Dr. Turchetta's contrary opinion did not have substantial probative value, and the diagnosis made by Dr. Zielinski was only "provisional[]," (R. at 458). A diagnosis alone cannot support a finding that an impairment is severe, and the ALJ's finding that the impairment was not severe is supported by the ME's testimony and other evidence in the record.

The ALJ did not err in finding that Plaintiff's substance use disorder was a contributing factor material to the determination of disability. It is Plaintiff's burden to prove that his cannabis use was not a contributing factor, and he cannot shift this burden to the Commissioner by continuously using cannabis and then arguing that there is no evidence in the record that he would not be impaired if he ceased his substance abuse. Accepting Plaintiff's

argument would lead to an absurd result as it would encourage other claimants to remain high continuously.

The ALJ's finding with respect to Plaintiff's credibility is more than amply supported by evidence in the record. Plaintiff lied to Dr. Unger about his substance use, and he told Dr. Zielinski that he "lies to get his way," (R. at 456). Moreover, it is not even certain that the statement about which Plaintiff complains is part of the ALJ's credibility finding. To the extent that it is, the Court sees no error. Even if it were error, the ALJ's credibility finding is still fully supported by the fact that Plaintiff lied to Dr. Unger about his substance use.

Accordingly, Plaintiff's claims of error should be rejected. I so recommend.

## Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and

of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


**/s/  David L. Martin**
DAVID L. MARTIN
United States Magistrate Judge
August 23, 2012